UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  19-XXXXX-CIV-XXXXX

ASLAM IBRAHIM

 Plaintiff,

v.

AMERICAN CRANE AND
TRACTOR PARTS, INC., a
foreign for-profit corporation,
registered to do business in Florida

 Defendant.

_____/

## COMPLAINT

Plaintiff, ASLAM IBRAHIM  (hereinafter referred to as "Mr. Ibrahim" or "Plaintiff"), by and through his undersigned attorney, files his COMPLAINT against AMERICAN CRANE AND TRACTOR PARTS, INC. (hereinafter referred to as "American Crane" or "Defendant"), a Missouri for profit corporation registered to conduct business in Florida, and states:

### JURISDICTION AND VENUE

1. This is an action at law for damages and in equity for injunctive and declaratory relief pursuant to the Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), the Fair Labor Standards Act, 29 U.S.C. Title 8, and the Florida Civil Rights Act, Section 760.01, *et seq.*, Florida Statutes (the "FCRA").

2. Mr. Ibrahim, a Florida resident, filed a Charge with the EEOC and Florida Commission on Human Relations ("FCHR") for discrimination based upon his religion, national

origin after he was terminated by American Crane in violation of the FCRA and Title VII. A "Notice of Right to Sue" was issued to Mr. Ibrahim on September 4, 2019, and he received the notice three days later on September 7, 2019. As a result, Mr. Ibrahim is permitted to file suit in this Court to seek damages, both compensatory and punitive, against Defendant.

3. A copy of the Notice of Right to Sue is attached hereto as Exhibit "A." Plaintiff has furthermore complied with all conditions precedent before filing this suit against Defendant and meets the definition of an "employee" under Title VII and the FCRA.

4. This Court has both federal question and diversity subject matter jurisdiction over the claims made herein because (i) Plaintiff asserts a claim under Title VII and (ii) because Plaintiff is a resident of Florida and Defendant is a citizen of another state and this is an action for recovery of damages in excess of $100,000.00, excluding legal fees and costs.

5. The Florida operations of American Crane are located in Doral, Florida, which was the workplace of Mr. Ibrahim while he was employed by American Crane.

6. At all times relevant Plaintiff, was and is a citizen of the United States and a resident of the State of Florida, residing in Broward County.

7. American Crane employs over one-hundred employees nationally and over twenty (20) employees in Florida, and meets the definition of "employer" under both Title VII and the FCRA.

8. Records relevant to the unlawful practices alleged herein were maintained or administered in Miami-Dade County, Florida, at the Doral location American Crane. Therefore,

venue is proper in this Court.

## FACTUAL STATEMENT
## APPLICABLE TO ALL COUNTS

9. By January 7, 2019, Aslam Ibrahim had been employed by Defendant for over twelve (12) years. He worked in the company's warehouse as a manual laborer. By that time, he had been given the title "warehouse supervisor," but in reality he had substantially the same responsibilities as the other warehouse workers.

10. Mr. Ibrahim had an excellent work history with American Tractor and was rarely reprimanded. Yet, on January 7, 2019 Mr. Ibrahim was summarily terminated and given no reason whatsoever for his termination.

11. At the time of his termination, Mr. Ibrahim was offered $6,000.00 as severance in exchange for his agreement to release American Tractor of any claims Mr. Ibrahim had against them.

12. Mr. Ibrahim is a Muslim, an immigrant from Kenya and African American. Mr. Ibrahim's treatment upon termination, in particular being terminated for no reason whatsoever and without any warning whatsoever, was a result of his religion, national origin and race.

13. After Mr. Ibrahim had been terminated for no reason, Mr. Ibrahim contacted the human resource manager for American Crane and asked the reason for his termination. After some time, Mr. Ibrahim was told only that he was because he "failed to complete inventory." In reality, that was not true and the stated reason certainly did not warrant termination with no warning whatsoever.

14. American Crane annually undergoes inventory counts of its products. In

December, 2018, Mr. Ibrahim participated in the counting and reporting of the annual inventory to completion. Therefore, the reason given by the human resource manager of American Crane for Mr. Ibrahim's termination was factually baseless.

15. Furthermore, even if the reason given by American Crane had some factual basis in reality (it didn't), firing Mr. Ibrahim without warning was neither justified nor consistent with American Crane's typical business practices for White, non-Muslim, non-African immigrant employees, particularly for a single infraction.

16. In light of the foregoing, rather than accept American Tractor's insulting offer of severance, Mr. Ibrahim hired counsel who sent American Tractor a letter detailing the illegal nature of Mr. Ibrahim's termination. That letter went unanswered.

17. Accordingly, Mr. Ibrahim filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the FCHR. Following an apparent futile attempt to obtain a legitimate explanation for the termination of Mr. Ibrahim, the EEOC ultimately issued the Notice of Right to Sue. Ex. A.

18. When other workers who were not Muslim, not Kenyan and not African American at the Doral warehouse had been terminated by American Crane in the past, they were given a warning or a performance review (whether formal or informal), and an opportunity to take corrective action prior to termination. No such opportunity was provided to Mr. Ibrahim only because of Mr. Ibrahim's religion, national origin and race.

19. Furthermore, Mr. Ibrahim is aware of only one other employee of American

Crane who, like him, was a Muslim immigrant. That former employee, like Mr. Ibrahim, was terminated suddenly and without justification. Like Mr. Ibrahim, that former employer was offered an insulting amount of severance in exchange for a release of claims. And like Mr. Ibrahim, that former employee rejected the offer of severance because he believed he was wrongfully terminated.

20. Also, at the time that Mr. Ibrahim was terminated, he informed the human resource manager that he was owed several thousand dollars in unpaid overtime. During the preceding two year period, Mr. Ibrahim worked between forty-five (45) and fifty-five (55) hours per week, or an average of approximately forty-eight (48) hours per week. However, during that entire period Mr. Ibrahim was never paid any overtime whatsoever. Therefore, Mr. Ibrahim is entitled to recover his unpaid overtime from American Tractor under the Fair Labor Standards Act, 29 U.S.C. Chapter 8 (the "FLSA").

21. Specifically, during the two years prior to his termination, Mr. Ibrahim was paid $1000.00 per week for working forty (40) hours, or $25.00 per hour. Therefore, under the FLSA Mr. Ibrahim's overtime pay is $37.50 per hour.

22. Because of American Tractor's refusal to pay him overtime, Mr. Ibrahim is entitled to be paid his overtime rate of $37.50 per hour for a total of eight-hundred hours of unpaid overtime, or a total of $30,000.00.

23. When Mr. Ibrahim was terminated and offered $6000.00 as severance, Mr. Ibrahim demanded that the offer be increased by the amount of his unpaid overtime. As a result of that demand, American Tractor increased its original severance offer $1000.00 to $7,000.00, effectively admitting that Mr. Ibrahim was entitled to overtime pay.

*Ibrahim v. American Crane and Tractor Parts, Inc.*
Page 6

24. However, even though American Tractor acknowledged owing Mr. Ibrahim overtime pay, its offer of an additional $1000.00 was far short of the overtime pay that it owed Mr. Ibrahim at the time American Crane illegally terminated Mr. Ibrahim.

25. Following his termination by American Tractor, Mr. Ibrahim remained unemployed for approximately twenty-one (21) weeks. During that period, Mr. Ibrahim aggressively searched for alternative employment, but was unsuccessful until June 1, 2019, when Mr. Ibrahim obtained another job, although making substantially less money than when he was employed by American Crane.

26. As a result of Mr. Ibrahim's illegal termination, Mr. Ibrahim has suffered damages of lost salary for the time that he was not employed and also the reduced salary that he has been paid since his illegal termination. Mr. Ibrahim is also entitled to punitive damages because his illegal termination was willful, indeed malicious, on the part of American Tractor.

27. In sum, Mr. Ibrahim was terminated with no warning or reason by American Crane because he is a Muslim, a Kenyan immigrant, or African American, or all three. His treatment was unlike other non-Muslim, non-Kenyan immigrant, and non-African American employees of American Tractor in that (i) the other employees were not terminated for no legitimate basis, (ii) were not terminated for a false basis, and (iii) were given some warning and opportunity to take corrective action, prior to being terminated. Furthermore, American Tractor has exhibited a pattern of illegal disparate treatment of its Muslim employees.

28. Mr. Ibrahim has hired legal counsel and agreed to pay his counsel and reasonable fee.

## COUNT I
## CLAIM UNDER FCRA FOR DUE TO DISCRIMINATION
## BASED UPON RELIGION, NATIONAL ORIGIN AND/OR RACE

29. The factual and jurisdictional allegations in paragraphs 1 though 28 of this Complaint are hereby incorporated by reference.

30. The actions of American Tractor constitute illegal discrimination based upon religion, national origin and race in violation of the provisions of Section 760.10 Florida Statutes and related sections.

31. As a direct and proximate result of Defendant's illegal and intentional discrimination, Mr. Ibrahim has been severely damaged, including the loss of his pay, benefits, and future advancement. Also, Mr. Ibrahim has been humiliated, isolated, and singled out for harsh treatment, by Defendant.

## COUNT II
## CLAIM UNDER TITLE VII FOR DAMAGES
## DUE TO DISCRIMINATION BASED UPON RELIGION,
## NATIONAL ORIGIN AND RACE

32. The factual and jurisdictional allegations in paragraphs 1 though 28 of this Complaint are hereby incorporated by reference.

33. Mr. Ibrahim was terminated by American Crane due to his religion, national origin and race. The actions of American Crane constituted illegal discrimination based upon religion, national origin and race in violation of Title VII.

34. Other non-Muslim, non-African immigrants and non-African American

employees of American Crane were not treated in a manner similar to Mr. Ibrahim. In particular, when other non-Muslim, non-African immigrant and non-African American employees of American Crane were terminated, they were provided with a warning, notice and given a legitimate basis for their termination.

35. Mr. Ibrahim's termination was an intentional act of discrimination by American Tractor, Mr. Ibrahim's employer, that violated his rights under Title VII.

36. As a direct and proximate result of American Tractor's illegal and intentional discrimination, Mr. Ibrahim has been severely damaged, including the loss of his pay, benefits, and future advancement. Mr. Ibrahim has also been humiliated, isolated, and intentionally singled out for harsh treatment by American Crane.

## COUNT III
## UNPAID OVERTIME UNDER THE FLSA

37. The factual and jurisdictional allegations in paragraphs 1 through 28 of this Complaint are hereby incorporated by reference.

38. American Crane willfully failed to pay Mr. Ibrahim overtime for the two years preceding his termination on January 7, 2019.

39. Mr. Ibrahim is defined as a non-exempt employee under the FLSA, and did not meet any of the exemptions under 29 U.S. Code § 213.

40. In particular, Mr. Ibrahim worked at least forty-eight hours per week, on average, from January 7, 2017 through January 7, 2019. However, Mr. Ibrahim was not paid any overtime whatsoever for the eight (8) hours he worked over and above the forty-hour work week.

41. As a result, Mr. Ibrahim is entitled to recover for the approximately eight-hundred hours of overtime he worked for American Crane, but for which he was not compensated.

42. The amount of Mr. Ibrahim's unpaid overtime pay, at the rate of $37.50 per hour, is $30,000.00.

43. The failure to pay Mr. Ibrahim overtime was intentional on the part of American Crane and American Crane should be assessed special punitive damages to discourage such illegal conduct in the future.

## DEMAND FOR RELIEF

Plaintiff Aslam Ibrahim hereby demands relief against Defendant American Crane as follows:

A. As to Counts I and II, Mr. Ibrahim demands front pay and benefits for the period of Mr. Ibrahim's unemployment due to his illegal termination and the reduction in his salary since he obtained alternative employment.

B. As to Counts I and II, Mr. Ibrahim demands the costs incurred for bringing this action, including reasonable attorney's fees in accordance with Title VII and the FCRA;

C. As to Counts I and II, special damages and punitive damages, as provided under Title VII and the FCRA, in an amount that will reasonably deter American Crane from engaging in illegal discriminatory employment practices.

D. As to Counts I and II, Mr. Ibrahim demands consequential damages for the emotional distress caused by the illegal discrimination of American Crane against Mr. Ibrahim;

E. As to Count III, Mr. Ibrahim demands overtime pay in the amount of $30,000.00;

F. As to Count III, Mr. Ibrahim demands statutory or special damages of triple the amount

of Mr. Ibrahim's unpaid overtime;

G. As to Count III, Mr. Ibrahim demands recovery of the legal costs and fees for bringing this action, as provided under the FLSA; and

H. As to all counts, such further relief deemed by this Court to be appropriate and just.

## JURY DEMAND

Plaintiff Aslam Ibrahim hereby demands a jury trial as to all claims so triable.

Respectfully Submitted on this 2nd day of December, 2019

>**MATHEWS GIBERSON LLP**
>219 Davie Blvd.
>Fort Lauderdale, FL 33315
>*Counsel for Plaintiff*
>
> By: /s/ Guy F. Giberson
>Guy F. Giberson
>Florida Bar No.: 627402
>Primary Email: gfg@mathewsllp.com
>Walter J. Mathews
>Florida Bar No.: 174319
>Secondary Email: wjm@mathewsllp.com